JOHNSON & WEAVER, LLP
FRANK J. JOHNSON (Cal. Bar No. 174882)
frankj@johnsonandweaver.com
BRETT M. WEAVER (Cal. Bar No. 204715)
brett@johnsonandweaver.com
501 W. Broadway, Suite 1720
San Diego, California 92101
Telephone: 619-230-0063
Facsimile: 619-238-0622

COHEN COOPER ESTEP & ALLEN, LLC
STEVEN J. ESTEP (GA Bar No. 250450)
sestep@ccealaw.com
JEFFERSON M. ALLEN (GA Bar No. 010898)
jallen@ccealaw.com
Admitted Pro Hac Vice
3330 Cumberland Boulevard, Suite 600
Atlanta, Georgia 30339
Telephone: (404) 814-0000
Facsimile: (404) 816-8900

*Attorneys for Plaintiff and/or Counterdefendant
Cold Smoke Finance, LLC*

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLD SMOKE FINANCE, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID KAHN,<br><br>Defendant. | Case No. 10-90637-PB<br><br>Related to Bankruptcy Case No. 10-12306-PB7<br><br>MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF COLD SMOKE FINANCE, LLC'S SPECIAL MOTION TO STRIKE DAVID KAHN'S COUNTERCLAIM UNDER CALIFORNIA CODE OF CIVIL PROCEDURE §425.16 |
| AND RELATED COUNTERCLAIM | Date:   August 22, 2011<br>Time:   10:30 a.m.<br>Judge: Hon. Peter W. Bowie |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................ 1

II.     RELEVANT FACTS .................................................................................. 2

III.    OVERVIEW OF THE ANTI-SLAPP STATUTE .................................... 4

IV.     THE COURT SHOULD GRANT COLD SMOKE'S ANTI-SLAPP MOTION .............. 6

        A.      Cold Smoke's Challenged Conduct Arises From The Exercise Of Its First Amendment Rights ....................................................... 7

        B.      Kahn Cannot Meet Its Burden Of Showing A Reasonable Probability Of Prevailing On Its Claims ........................................ 8

                1.      The litigation privilege bars Kahn's third claim for relief .......................... 8

                2.      Kahn cannot prevail on his third claim for another reason: He lacks standing to bring it ...................................... 10

V.      KAHN IS LIABLE FOR THE ATTORNEYS' FEES AND COSTS COLD SMOKE INCURRED IN BRINGING THIS MOTION ................................. 11

VI.     CONCLUSION .......................................................................................... 11

-i-

1

**TABLE OF AUTHORITIES**

2 **CASES**

3 *Abraham v. Lancaster Community Hospital*, 217 Cal.App.3d 796 (1990).........................9

4 *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232 (2007)................9

5 *American Humane Association v. Los Angeles Times Communications*, 92 Cal.App.4th
6     1095 (2001).........................................................................................................11

*Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005).........................12
7
*Braun v. Chronicle Publishing Company*, 52 Cal.App.4th 1036 (1997).........................5
8
*Cargill Inc. v. Progressive Dairy Solutions, Inc.*, 2008 U.S. Dist. LEXIS 46972 (E.D.
9     Cal. 2008)..........................................................................................................10

10 *Chavez v. Mendoza*, 94 Cal.App.4th 1083 (2001) .........................................................7

11 *Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315 (2008) ...........................11

12 *Church of Scientology of California v. Wollersheim*, 42 Cal.App.4th 628 (1996)............1, 5, 6

13 *City of Cotati v. Cashman*, 29 Cal.4th 69 (2002).........................................................7

14 *Condit v. Nat'l Enquirer, Inc.*, 248 F. Supp. 2d 945 (E.D. Cal. 2002)...........................8

15 *Designing Health, Inc. v Erasmus*, 2001 U.S. Dist. LEXIS 25952 (C.D. Cal. 2001)...........10

16 *Dowling v. Zimmerman*, 85 Cal.App.4th 1400 (2001)...................................................5

17 *Drummond v. Desmarais*, 176 Cal.App.4th 439 (2009) .................................................2

18 *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138 (C.D. Cal. 2000) ...................10

19 *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53 (2002)........................1, 5, 7

20 *Espinoza v. City of Imperial*, 2008 U.S. Dist. LEXIS 45611 (S.D. Cal 2008) ...................1

21 *Flatley v. Mauro*, 39 Cal.4th 299 (2006) ...............................................................5, 9

22 *Fleming v. Coverstone*, 2009 U.S. Dist. LEXIS 22021 (S.D. Cal. 2009).........................5

23 *Fleming v. Coverstone*, 2009 U.S. Dist. LEXIS 53825 (S.D. Cal. 2009).........................11

24 *Griffen v. Allstate Ins. Co.*, 920 F.Supp. 127, 130 (C.D. Cal. 1996) ...............................10

25 *Hung v. Wang*, 8 Cal.App.4th 908 (1992) .................................................................8

26 *In re Stoll*, 252 B.R. 492 (9th Cir. BAP 1995).............................................................10

27

28

-ii-

*Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728 (2003).......................................5, 7, 9

*Kashian v. Harriman*, 98 Cal.App.4th 892 (2002) ..............................................................9

*Kaur v. ETS Services, Inc.*, 2009 U.S. Dist. LEXIS 88030 (E.D. Cal. 2009)...................10

*Microsoft Corp v. BEC Computer Co., Inc.*, 818 F.Supp. 1313 (C.D. Cal. 1992) ............9

*Navellier v. Sletten*, 29 Cal.4th 82 (2002)..........................................................................6

*Pacific Gas & Electric Company v. Bear Stearns & Company*, 50 Cal.3d 1118 (1990).................9

*Restaino v. Bah*, 321 B.R. 41 (9th Cir. B.A.P. 2004) ....................................................1, 5

*Rubin v. Green*, 4 Cal.4th 1187 (1993)................................................................................9

*Salma v. Capon*, 161 Cal.App.4th 1275 (2008) .................................................................6

*Shekhter v. Fin. Indem. Co.*, 89 Cal.App.4th 141 (2001) ...............................................7, 8

*Silberg v. Anderson*, 50 Cal.3d 205 (1990)........................................................................9

*Simmons v. Allstate Insurance Co.*, 92 Cal.App.4th 1068 (2001) .....................................6

*Taus v. Loftus*, 40 Cal.4th 683 (2007)................................................................................8

*Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors*, 2010 U.S. Dist. LEXIS 115312 (S.D. Cal. 2010) ..............................................................10

*Whitty v. First Nationwide Mortgage Corp.*, 2007 U.S. Dist. LEXIS 12988 (S.D. Cal. 2007) .........................................................................................................................5

*Wilcox v. Superior Court*, 27 Cal.App.4th 809 (1994) .......................................................5

*Wise v. Thrifty Payless, Inc.*, 83 Cal.App.4th 1296 (2000)................................................8

*Yack v. Dacquisto*, 2009 Bankr. LEXIS 4554 (9th Cir. BAP 2009)................................10

# I.    INTRODUCTION

A Strategic Lawsuit Against Public Participation ("SLAPP") is a civil action aimed at preventing citizens from exercising their First Amendment rights or punishing those who have done so. *Church of Scientology of California v. Wollersheim*, 42 Cal.App.4th 628, 645 (1996) *(overruled on other grounds by Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53 (2002)). A SLAPP is "brought, not to vindicate a legal right, but rather to interfere with the defendant's ability to pursue his or her own interests." *Id.* "The aim is not to win the lawsuit but to detract the defendant from his or her objective." *Id.*

Debtor David Kahn's amended counterclaim against Cold Smoke Finance, LLC ("Cold Smoke") for intentional interference with prospective economic advantage is a SLAPP. Specifically, Kahn's third claim for relief arises from Cold Smoke's previous filing of a lawsuit against Kahn. Kahn's counterclaim is patently false and, even worse, is a blatant attempt to punish Cold Smoke for exercising its First Amendment rights. Accordingly, Cold Smoke moves to strike Kahn's claim for interference with prospective economic advantage under California Code of Civil Procedure §425.16 — the "anti-SLAPP statute." *See Restaino v. Bah*, 321 B.R. 41 (9th Cir. B.A.P. 2004) (holding bankruptcy courts must apply anti-SLAPP statute to pendant state-law claims arising out of protected First Amendment Activity).

As explained below, California's Legislature enacted the anti-SLAPP statute "for the purpose of providing an efficient procedural mechanism to obtain an early and inexpensive dismissal of nonmeritorious claims 'arising from any act' of the defendant 'in furtherance of the person's right of petition or free speech under the United States or California Constitution . . .'" *Espinoza v. City of Imperial*, 2008 U.S. Dist. LEXIS 45611, *5-6 (S.D. Cal 2008) (citations omitted). A court must strike a cause of action arising from protected activity, "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.* at *6.

A court engages in a two-step process in deciding an anti-SLAPP motion. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is

-1-

one arising from protected activity. . . . If the court finds that such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* at *6-7.

In this case, Cold Smoke can easily satisfy the first prong of the anti-SLAPP statute; while Kahn has no chance — let alone a reasonable probability — of prevailing on his third claim for relief.

With respect to the first prong, Kahn's claim for interference with prospective economic advantage falls squarely within the ambit of the anti-SLAPP statute. The gist of the claim is that Cold Smoke "created a plan to torpedo the relationship between" Kahn and Media Cart Holdings ("MCH") by filing a lawsuit in the United States District Court of Southern California. It is settled that "[l]itigation is activity protected by the speech and petition clauses" of the First Amendment to the United States Constitution. *Drummond v. Desmarais*, 176 Cal.App.4th 439, 449 (2009).

As for the second prong, Kahn can never prevail as a matter of law for two independent reasons. First, Kahn's claim is absolutely barred by California's litigation privilege. And second, even if the claim was not barred, Kahn has no standing to bring it since it belongs to the bankruptcy estate.

For these reasons, the Court should grant Cold Smoke's anti-SLAPP motion and, as required by statute, award Cold Smoke the attorneys' fees and costs it incurred in bringing this motion.

## II.    RELEVANT FACTS

The dispute between Cold Smoke and Kahn is a long and complicated story. In a nutshell, a con-artist named Tim McCallum ("McCallum") duped Cold Smoke into loaning him over $4 million under the guise that he was using it to manufacture, distribute, and sell baseball hats. In truth, McCallum was funneling much of that money to Kahn who used it to purchase stock in a company called Media Cart Holdings ("MCH"). Kahn then defrauded Cold Smoke into loaning him money, which he gave to McCallum so that McCallum could pay back Cold Smoke on his

COLD SMOKE'S ANTI-SLAPP MOTION                    CASE NO. 10-90637-PB7

1  loan and get even more money.  Although McCallum was supposed to use the new money to buy

2  more hats, he gave it to Kahn who used it to buy more stock in MCH.  Like all Ponzi schemes,

3  the scam ended when Cold Smoke discovered what McCallum and Kahn were doing and stopped

4  giving them any more money.

5  　　　Cold Smoke filed this adversary proceeding to prevent discharge of its claim against Kahn.

6  Rather than defending the case on the merits, Kahn has chosen to drive up litigation costs by

7  blaming the victim instead.

8  　　　Kahn's counterclaim weaves a convoluted tale about how Cold Smoke conspired with

9  McCallum to defraud Kahn.  Specifically, Kahn has concocted a story about how Cold Smoke

10  lied to him about McCallum and his business prospects so that Kahn would: (1) loan McCallum

11  money; and (2) agree to purchase an additional $1 million in MCH stock, which he would then

12  sell to McCallum in exchange for a 10% stake in McCallum's company.  According to Kahn's

13  furtive imagination, Cold Smoke came up with this plan so it could take the MCH stock from

14  McCallum when he defaulted on his loan from Cold Smoke.  Kahn's allegations, while creative,

15  have no basis in fact or common sense.

16  　　　For one thing, why would Cold Smoke indirectly try to acquire the MCH stock through

17  McCallum rather than simply buying the stock directly from MCH or Kahn?  Second, why would

18  Kahn justifiably rely on Cold Smoke's representations about McCallum when McCallum and

19  Kahn have been "close friends for a long time" who still speak with each other "all the time."

20  *See* Declaration of Brett Weaver at ¶7 ("Weaver Dec.").  Fortunately, the Court does not have to

21  answer these questions in order to resolve this motion.  The only facts necessary for this motion

22  are the following:

23  　　　On January 4, 2010, Cold Smoke filed a complaint in the United States District Court for

24  the Southern District of California against McCallum, Kahn and Kahn's various entities (the

25  "Federal Lawsuit").  A true and correct copy of the Federal Lawsuit, entitled *Cold Smoke*

26  *Finance, LLC v. McCallum, et al.* (Case No. 10-cv-0007) is attached to the Weaver Dec. as

27

28
-3-

1  Exhibit A.[1]    Kahn moved to dismiss the Federal Lawsuit, primarily arguing that Cold Smoke

2  failed to plead its common law fraud and Federal RICO claims with the specificity required by

3  Federal Rule of Civil Procedure 9(b).

4      On February 26, 2010, Cold Smoke filed a voluntary dismissal of the Federal Lawsuit

5  without prejudice for tactical reasons.  Weaver Dec. at ¶3.

6      Thereafter, on May 20, 2010, Cold Smoke filed another complaint against the same parties,

7  for the same causes of action (other than the Federal RICO claim) in the Superior Court of

8  California for the County of San Diego (the "State Lawsuit").  A true and correct copy of that

9  complaint is attached to the Declaration of Brett Weaver at Ex. B.[2]  Rather than file a substantive

10  response to that complaint, Kahn (but not his entities) filed for bankruptcy protection on July 13,

11  2010. See Kahn's Bankruptcy Petition (Doc. No. 1).

12      Notably, the Superior Court (Hon. William R. Nevitt, Jr.) overruled McCallum's demurrer.

13  The Kahn entities, who initially took the erroneous position that the automatic stay against Kahn

14  applied to them, eventually were order to file an answer.   The State Lawsuit is set to go to trial in

15  January 2012.  Weaver Dec. at ¶5.

16      Even though that lawsuit is not yet resolved, Kahn brings a counterclaim in this Court

17  alleging, in part, that Cold Smoke filed the Federal Lawsuit in order to "torpedo" his relationship

18  with MCH.  Like all SLAPPs, Kahn's goal is not to prevail but to distract Cold Smoke from its

19  objectives.  Accordingly, the Court should strike Kahn's third claim for relief under California's

20  anti-SLAPP statute.

21

22  **III.    OVERVIEW OF THE ANTI-SLAPP STATUTE**

23      The legal principles governing anti-SLAPP motions, and the reasons for the anti-SLAPP

24  statute, are described in numerous cases.  *See e.g. Flatley v. Mauro*, 39 Cal.4th 299, 311-313

25  _____

[1] Cold Smoke requests the Court take judicial notice of the Federal Lawsuit under Fed. R. Evid.
26  201(d).

27  [2] Cold Smoke requests the Court take judicial notice of the State Lawsuit as well.

28

-4-

1    (2006); *Wilcox v. Superior Court*, 27 Cal.App.4th 809, 815-817 (1994) *(overruled on other*

2    *grounds by Equilon Enterprises*, 29 Cal.4th 53); *Dowling v. Zimmerman*, 85 Cal.App.4th 1400,

3    1414 (2001); and *Church of Scientology of California*, 42 Cal.App.4th at 644-645. In short, the

4    statute "is designed to protect citizens in the exercise of their constitutional rights of free speech

5    and petition. It is California's response to the problems created by meritless lawsuits brought to

6    harass those who have exercised these rights." *Id.* at 644. Because "these meritless lawsuits seek

7    to deplete 'the defendants energy' and drain 'his or her resources,' the Legislature sought 'to

8    prevent SLAPPs by ending them early without great cost to the SLAPP target.'" *Flatley*, 39

9    Cal.4th at 312; *Braun v. Chronicle Publishing Company*, 52 Cal.App.4th 1036, 1042 (1997)

10    (explaining Legislature enacted §425.16 to "nip SLAPP litigation in the bud by striking offending

11    causes of action which 'chill the valid exercise of the constitutional rights of freedom of speech

12    and petition.'").

13       The California Legislature mandates that courts interpret the anti-SLAPP statute broadly.

14    California Code of Civil Procedure §425.16(a). Thus, the anti-SLAPP statute requires a court to

15    strike any meritless cause of action that arises from the defendant's exercise of constitutionally

16    protected activity.[3] *Fleming v. Coverstone*, 2009 U.S. Dist. LEXIS 22021, *8-9 (S.D. Cal. 2009).

17    "Any 'person' sued for acts in furtherance of free speech or petition activities is protected by the

18    anti-SLAPP statute." *Whitty v. First Nationwide Mortgage Corp.*, 2007 U.S. Dist. LEXIS 12988,

19    *36 (S.D. Cal. 2007). "'Person' as used in §425.16 includes corporations." *Id.* at *36-37.

20       While anti-SLAPP motions arise out of the California Code of Civil Procedure, they are

21    unquestionably available to litigants defending state-law claims in bankruptcy court. *Restaino*,

22    321 B.R. at 46 ("Debtor invoked state law remedies in bankruptcy court which he could have (but

23    did not) raised in state court. No reason exists to deny Appellants a state law remedy which they

24

25

---

26    [3] That this case involves a counterclaim rather than an original complaint is not significant since
the anti-SLAPP statute explicitly applies to complaints and cross-complaints. *Jarrow Formulas,*

27    *Inc. v. LaMarche*, 31 Cal.4th 728, 734 fn. 2 (2003).

28

COLD SMOKE'S ANTI-SLAPP MOTION            CASE NO. 10-90637-PB7

1  could have asserted against Debtor's state law claims in state court . . . therefore, application of the

2  anti-SLAPP statute to pendent state law claims is appropriate.").

3        The filing of an anti-SLAPP motion triggers a two-step inquiry. *Navellier v. Sletten*, 29

4  Cal.4th 82, 88 (2002).    In step one, the court determines whether the defendant (or

5  counterdefendant) has made a threshold showing that the challenged cause of action arises from

6  protected activity. *Id.* If such a showing is made, the court proceeds to the second step, which is

7  to determine whether the plaintiff (or counterclaimant) has demonstrated a reasonable probability

8  of prevailing on the claim. *Id.*; *Equilon Enterprises*, 29 Cal.4th at 67.

9        In making its determinations, the court applies a test similar to that of a motion for

10  summary judgment, nonsuit or directed verdict. *Simmons v. Allstate Insurance Co.*, 92

11  Cal.App.4th 1068, 1073 (2001). Thus, unlike a motion to dismiss or normal motion to strike,

12  where the court must accept the plaintiff's allegations as true, an anti-SLAPP motion "pierces the

13  pleadings and requires an evidentiary showing." *Id.* The plaintiff must offer competent and

14  admissible evidence upon which the defendant's liability is based. *Church of Scientology of*

15  *California*, 42 Cal.App.4th at 654. "Unverified allegations in the pleadings or averments made on

16  information and belief cannot make the showing." *Salma v. Capon*, 161 Cal.App.4th 1275, 1289

17  (2008).

18

19  **IV.    THE COURT SHOULD GRANT COLD SMOKE'S ANTI-SLAPP MOTION**

20        The expansive reach of the anti-SLAPP statute easily applies to Kahn's third claim for

21  relief.[4] And since there is no probability — let alone a reasonable one — that Kahn will prevail

22  against Cold Smoke on this claim, the Court should grant Cold Smoke's anti-SLAPP motion.

23

24

25     [4] It is proper to bring an anti-SLAPP motion to less than all causes of action alleged in a

26  complaint. The express language of the anti-SLAPP statute allows a single cause of action to be
   stricken even if other claims remain to be resolved. *Shekhter v. Fin Indem. Co.*, 89 Cal.App.4th

27  141, 150 (2001).

28

COLD SMOKE'S ANTI-SLAPP MOTION                           CASE NO. 10-90637-PB7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.    Cold Smoke's Challenged Conduct Arises From The Exercise Of Its First Amendment Rights**

In terms of the threshold showing, "the moving defendant's burden is to show the challenged cause of action 'arises' from protected activity." *Shekhter*, 89 Cal.App.4th at 151; *Equilon Enterprises*, 29 Cal.4th at 67. "[A]rising from" protected activity "means simply that the defendant's act underlying the plaintiff's cause of action must **itself** have been an act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal.4th 69, 77-78 (2002) (emphasis original).

As explained by Justice Haller in *Chavez v. Mendoza*, 94 Cal.App.4th 1083, 1087 (2001), "[i]t is well established that filing a lawsuit is an exercise of a party's constitutional right of petition." Almost without exception then, claims based on the filing of a lawsuit are protected by the anti-SLAPP statute. *See Jarrow Formulas*, 31 Cal.4th at 734-737.

Here, Kahn's claim for interference with prospective economic advantage alleges:

- Smoke Finance, Dan Brooks, Mike Traa and each of them created a plan to torpedo the relationship between Mr. Kahn and MCH, **including, but not limited to filing a complaint for fraud and RICO violations** on January 4, 2010, a week before the shareholder meeting. Kahn's counterclaim at ¶70.[5]

- On January 4, 2010, Smoke Finance, Dan Brooks, Mike Traa and each of them, in the name of Smoke Finance, **filed a lawsuit (the "Lawsuit")** against Mr. Kahn and three Mr. Kahn entities, which included RICO claims. *Id.* at ¶72.

- On or about January 4, 2010 Cold Smoke filed a lawsuit against Mr. Kahn falsely claiming Smoke Finance, Dan Brooks, Mike Traa and each of them had no knowledge of ASA's or Tim McCallum's investment in a profit participation position of Mr. Kahn's holdings in MCH. *Id.* at ¶77.

- Smoke Finance, Dan Brooks, Mike Traa and each of them lacked probable cause **to file the Lawsuit**. *Id.* at ¶78.

- Additionally, **the Lawsuit was filed** with a malicious intent. *Id.* at ¶79.

- **Second, Smoke Finance, Dan Brooks, Mike Traa and each of them filed the Lawsuit** in federal court with the RICO claims mostly in an attempt to scare Mr. Kahn and force a settlement. *Id.* at ¶80.

---

[5] All ¶ references are to Kahn's amended counterclaim.

COLD SMOKE'S ANTI-SLAPP MOTION                              CASE NO. 10-90637-PB7

1  By any definition, Kahn's third claim for relief arises out of the filing of the Federal Lawsuit. As

2  such, it falls within the ambit of the anti-SLAPP statute.

3

4  **B.     Kahn Cannot Meet Its Burden Of Showing A Reasonable Probability**

5  **Of Prevailing On Its Claims**

6  Because Cold Smoke has demonstrated that Kahn's claim arises from Cold Smoke's

7  constitutionally-protected activity, the burden shifts to Kahn to show a reasonable probability of

8  prevailing on its claims. *Shekhter*, 89 Cal.App.4th at 151.

9  To establish a reasonable probability of success on the merits, a SLAPP plaintiff must state

10 and substantiate a legally sufficient claim. *Taus v. Loftus*, 40 Cal.4th 683, 713-714 (2007). "The

11 adjective 'reasonable' requires the [plaintiff] to do more than demonstrate **some** chance of

12 winning; the [plaintiff] must show that, given the evidence, he or she has a substantial case."

13 *Hung v. Wang*, 8 Cal.App.4th 908, 929 (1992) (emphasis original). Put another way, the plaintiff

14 must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima

15 facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is

16 credited. *Id.* A SLAPP plaintiff cannot meet its burden of showing a reasonable probability of

17 prevailing if there are legal defects in its complaint that would be subject to a motion to dismiss

18 under Federal Rule of Civil Procedure 12(b)(6). *See Condit v. Nat'l Enquirer, Inc.*, 248 F. Supp.

19 2d 945, 953 (E.D. Cal. 2002).

20 Even if Kahn somehow manages to bring forth evidence supporting his allegations, Kahn's

21 third claim fails as a matter of law. Specifically, it is barred by California's litigation privilege.

22 And even if it was not, Kahn has no standing to bring it because the claim belongs to the

23 bankruptcy trustee.

24 **1.     The litigation privilege bars Kahn's third claim for relief**

25 California's litigation privilege, codified at California Code of Civil Procedure §47(b), is

26 absolute; it applies, regardless of whether the communication was made with malice or the intent

27 to harm. *Wise v. Thrifty Payless, Inc.*, 83 Cal.App.4th 1296, 1302 (2000). Put another way,

28

-8-

COLD SMOKE'S ANTI-SLAPP MOTION                                    CASE NO. 10-90637-PB7

application of the privilege does not depend on the publisher's "motives, morals, ethics or intent." *Silberg v. Anderson*, 50 Cal.3d 205, 220 (1990). "Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal.App.4th 892, 913 (2002).

Although originally applied only to defamation actions, the privilege has been extended to **any** communication, not just a publication, having "some relation" to a judicial proceeding. *Rubin v. Green*, 4 Cal.4th 1187, 1193-1194 (1993) (emphasis original). Indeed, "the policy of encouraging free access to the courts is so important that the litigation privilege extends beyond claims of defamation to claims of abuse of process, intentional infliction of emotional distress, negligent misrepresentation, invasion of privacy, fraud, and to the torts alleged here: **interference with contract and prospective economic advantage**." *Pacific Gas & Electric Company v. Bear Stearns & Company*, 50 Cal.3d 1118, 1132 (1990) (emphasis added). "In fact, the privilege applies to **any** action except one for malicious prosecution." *Id.* (emphasis added).

"There is, of course, a relationship between the litigation privilege and the anti-SLAPP statute." *Flatley*, 39 Cal.4th at 322. "The litigation privilege is . . . relevant to the second step in the anti-SLAPP analysis in that it may prevent a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." *Id.* at 323. Specifically, "the litigation privilege 'poses a clear bar' to actions based on statements made in litigation." *Jarrow*, 31 Cal.4th at 738.

Kahn's third claim is barred by the litigation privilege because it arises squarely from the filing of the Federal Lawsuit. *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1249 (2007) ("We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action."); *Rubin*, 4 Cal.4th at 1195 ("Filing the complaint and subsequent pleadings in the litigation" are protected by the litigation privilege.); *Abraham v. Lancaster Community Hospital*, 217 Cal.App.3d 796, 822 (1990) ("[I]t cannot be disputed that the filing of a lawsuit is a publication in the course of a judicial proceeding."); *Microsoft Corp v. BEC Computer Co., Inc.*, 818 F.Supp. 1313, 1319 (C.D. Cal. 1992) ("[T]he filing of improper or meritless pleadings . . . is privileged").

1     Moreover, Cold Smoke's alleged conduct in sending the Federal Lawsuit to MCH's

2  shareholders and directors is privileged as well. "[M]erely informing a third party of the pendency

3  of the litigation" is within the scope of the litigation privilege. *Cargill Inc. v. Progressive Dairy*

4  *Solutions, Inc.*, 2008 U.S. Dist. LEXIS 46972, *21 (E.D. Cal. 2008); *eCash Techs., Inc. v.*

5  *Guagliardo*, 210 F. Supp. 2d 1138, 1152 (C.D. Cal. 2000) (letter informing third party that

6  trademark suit had been filed was privileged); *Designing Health, Inc. v Erasmus*, 2001 U.S. Dist.

7  LEXIS 25952, *12-13 (C.D. Cal. 2001) (letter and news release to consumer and trade

8  publications and distributors announcing suit for misappropriation of trade secrets and other

9  claims were protected by the litigation privilege "because they simply informed the recipients of

10  the pendency of the litigation and the claims asserted"); *Weiland Sliding Doors and Windows, Inc.*

11  *v. Panda Windows and Doors*, 2010 U.S. Dist. LEXIS 115312, *10 (S.D. Cal. 2010)

12  ("Defendant's complaint alleges that the Press Release was sent 'directly to several Panda

13  customers.' Defendant's customers are undoubtedly persons who have 'substantial interest' in the

14  litigation . . . Thus, the litigation privilege applies on the face of the complaint.").

15     In sum, Kahn's third claim for relief is barred by the litigation privilege as a matter of law.

16          **2.    Kahn cannot prevail on his third claim for another reason: He lacks standing to bring it**

17

18     A trustee is the legal representative of the bankruptcy estate and as such has the capacity to

19  sue and be sued. *In re Stoll*, 252 B.R. 492, 495 (9th Cir. BAP 1995). "Only a trustee may pursue

20  a cause of action belonging to the bankruptcy estate." *Id.* "Causes of action existing at the time

21  the bankruptcy petition is filed are property of the estate." *Yack v. Dacquisto*, 2009 Bankr. LEXIS

22  4554, *15 (9th Cir. BAP 2009) (citations omitted). Thus, "[l]awsuits remain part of the

23  bankruptcy estate unless the bankruptcy trustee abandons them." *Griffen v. Allstate Ins. Co.*, 920

24  F.Supp. 127, 130 (C.D. Cal. 1996); *Kaur v. ETS Services, Inc.*, 2009 U.S. Dist. LEXIS 88030, *5

25  (E.D. Cal. 2009) (same).

26     Kahn's alleged claim for interference with prospective economic advantage accrued when

27  Cold Smoke filed the Federal Lawsuit on January 4, 2010. Kahn did not file for bankruptcy until

28  July 13, 2010 — six months later. The claim therefore belongs to the estate.

-10-

1    The Trustee has not abandoned Kahn's alleged claim against Cold Smoke. Quite the

2 opposite, the Trustee plans on selling it, along with Kahn's other purported assets, on August 22,

3 2011. *See* Doc No. 146. As such, the claim still belongs to the Trustee, and Kahn has no

4 standing to bring it.[6] Accordingly, Kahn cannot prevail on his third counterclaim, as a matter of

5 law, for this reason as well.

6

7 **V.    KAHN IS LIABLE FOR THE ATTORNEYS' FEES AND COSTS COLD SMOKE**
       **INCURRED IN BRINGING THIS MOTION**
8

9    The anti-SLAPP statute contains a mandatory, one-way attorneys' fee provision.

10 California Code of Civil Procedure §425.16(c). "An award of attorney fees to a prevailing

11 defendant [or counterdefendant] is mandatory under the anti-SLAPP statute." *Fleming v.*

12 *Coverstone*, 2009 U.S. Dist. LEXIS 53825, *13 (S.D. Cal. 2009) (*citing Christian Research*

13 *Institute v. Alnor*, 165 Cal.App.4th 1315, 1321 (2008)).

14    If the Court grants Cold Smoke's anti-SLAPP motion, it must also award Cold Smoke the

15 attorneys' fees and costs it incurred in striking Kahn's SLAPP claims. Cold Smoke will prove the

16 amount of its attorneys' fees and costs in a subsequent motion.[7]

17

18 **VI.    CONCLUSION**

19    The California Legislature enacted the anti-SLAPP statute in response to the "disturbing

20 increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of

21  [6] Kahn alleges that he is the assignee of all claims belonging to KCM, KCM MC Holdings, LLC
    and David J. Kahn as the Trustee of the David Kahn Trust. ¶4. Cold Smoke doubts that these
22  entities could validly transfer claims to Kahn a mere **four days** after he declared bankruptcy. But
    this issue need not be addressed now. From the face of the counterclaim, it is clear that Kahn's
23  third claim belonged exclusively to him pre-petition and now belongs exclusively to the Trustee.
    Indeed, all of the supposed damages resulting from Cold Smoke's alleged interference were
24  suffered by Kahn and not his entities. ¶82.

25  [7] It is a "commonsense conclusion" that the attorneys' fee request does not have to be documented
    at the time the anti-SLAPP motion is filed. *American Humane Association v. Los Angeles Times*
26  *Communications*, 92 Cal.App.4th 1095, 1104 (2001). "In the event the trial court grants the
    special motion to strike, the moving defendant will be able to more accurately document the fees
27  and costs actually incurred if the amount is fixed at a later date." *Id.*

28
COLD SMOKE'S ANTI-SLAPP MOTION                    CASE NO. 10-90637-PB7

1  freedom of speech and petition for the redress of grievances." *Bosley Medical Institute, Inc. v.*
2  *Kremer*, 403 F.3d 672, 682 (9th Cir. 2005); California Code of Civil Procedure §425.16(a).  The
3  anti-SLAPP statute would be meaningless if, like here, a defendant could countersue the plaintiff
4  based on its previous litigation activity.

5      Because Cold Smoke's challenged conduct arises from its protected conduct; and because
6  Kahn cannot, as a matter of law, prevail on his claims, the Court should grant Cold Smoke's
7  motion to strike the third claim for relief in Kahn's baseless counterclaim.  The Court should also
8  award Cold Smoke the yet-to-be-determined attorneys' fees and costs it incurred in connection
9  with this motion.

10  DATED: July 25, 2011

11                            JOHNSON & WEAVER, LLP
                             FRANK J. JOHNSON
12                            BRETT M. WEAVER

13

14          By:    _____ *s/ Brett M. Weaver*
                             BRETT M. WEAVER

15
16          501 W. Broadway, Suite 1720
            San Diego, California 92101
17          Telephone: (619) 230-0063
            Facsimile: (619) 238-0622

18          COHEN COOPER ESTEP & ALLEN, LLC
19          STEVEN J. ESTEP (GA Bar No. 250450)
            sestep@ccealaw.com
20          JEFFERSON M. ALLEN (GA Bar No. 010898)
            jallen@ccealaw.com
21          Admitted Pro Hac Vice
            3330 Cumberland Boulevard, Suite 600
22          Atlanta, Georgia 30339
            Telephone: (404) 814-0000
23          Facsimile: (404) 816-8900

24          *Attorneys for Plaintiff and/or Counterdefendant*
            *Cold Smoke Finance, LLC*

25
26
27
28

-12-