JOHNSON & WEAVER, LLP
FRANK J. JOHNSON (Cal. Bar No. 174882)
frankj@johnsonandweaver.com
BRETT M. WEAVER (Cal. Bar No. 204715)
brett@johnsonandweaver.com
501 W. Broadway, Suite 1720
San Diego, California 92101
Telephone: 619-230-0063
Facsimile: 619-238-0622

COHEN COOPER ESTEP & ALLEN, LLC
STEVEN J. ESTEP (GA Bar No. 250450)
sestep@ccealaw.com
JEFFERSON M. ALLEN (GA Bar No. 010898)
jallen@ccealaw.com
Admitted Pro Hac Vice
3330 Cumberland Boulevard, Suite 600
Atlanta, Georgia 30339
Telephone: (404) 814-0000
Facsimile: (404) 816-8900

*Attorneys for Plaintiff and/or Counterdefendant*
*Cold Smoke Finance, LLC*

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLD SMOKE FINANCE, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID KAHN,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM | Case No. 10-90637-PB<br><br>Related to Bankruptcy Case No. 10-12306-PB7<br><br>MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF COLD SMOKE FINANCE, LLC'S MOTION TO DISMISS DAVID KAHN'S AMENDED COUNTERCLAIM<br><br>Date: August 22, 2011<br>Time: 10:30 a.m.<br>Judge: Hon. Peter W. Bowie |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. RELEVANT FACTS ................................................................................................. 3

III. ARGUMENT ............................................................................................................. 4

A. The Court Should Dismiss Kahn's First Claim For Fraud ............................. 4

    1. None of Cold Smoke's alleged August 2007 misrepresentations are actionable ............................................................................................ 4

    2. Kahn impermissibly lumps the counterdefendants together ............... 6

    3. Kahn does not allege Cold Smoke knew its statements were false ............ 6

    4. Kahn's alleged reliance on Cold Smoke's due diligence was not reasonable ............................................................................................. 7

B. The Court Should Dismiss Kahn's Second Claim For Negligent Misrepresentation ............................................................................................ 9

C. The Court Should Dismiss Kahn's Third Claim For Interference With Prospective Economic Advantage ................................................................. 10

    1. The litigation privilege bars Kahn's third claim for relief ................ 10

    2. Kahn cannot prevail on his third claim for another reason: He lacks standing to bring it .............................................................................. 12

IV. CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

## CASES

*Abraham v. Lancaster Community Hospital*, 217 Cal.App.3d 796 (1990) ................................. 11

*Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232 (2007) ..................... 2, 11

*Cargill Inc. v. Progressive Dairy Solutions, Inc.*, 2008 U.S. Dist. LEXIS 46972 (E.D. Cal. 2008) ................................. 11

*Church of Scientology of California v. Wollersheim*, 42 Cal.App.4th 628 (1996) ..................... 1

*Cisneros v. Instant Capital Funding Group, Inc.*, 263 F.R.D. 595 (E.D. Cal. 2009) ..................... 6

*Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990) ................................. 5

*Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal.App.4th 781 (2001) ............................. 8

*Designing Health, Inc. v Erasmus*, 2001 U.S. Dist. LEXIS 25952 (C.D. Cal. 2001) ............. 11, 12

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) ................................. 6

*eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138 (C.D. Cal. 2000) ............................. 11

*E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal.App.4th 1308 (2007) ..................................... 9

*Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53 (2002) ..................................... 1

*Errico v. Pacific Capital Bank, N.A.*, 753 F.Supp.2d 1034 (N.D. Cal. 2010) ............................. 9

*Flatley v. Mauro*, 39 Cal.4th 299 (2006) ................................. 1

*Gallardo v. DiCarlo*, 203 F.Supp.2d 1160 (C.D. Cal. 2002) ................................. 9

*Griffen v. Allstate Ins. Co.*, 920 F.Supp. 127 (C.D. Cal. 1996) ................................. 12

*In re Sir*, 2010 Bankr. LEXIS 1800 (Bank. Ct. N.D. Cal. 2010) ................................. 8

*In re Stoll*, 252 B.R. 492 (9th Cir. BAP 1995) ................................. 12

*Kashian v. Harriman*, 98 Cal.App.4th 892 (2002) ................................. 10

*Kaur v. ETS Services, Inc.*, 2009 U.S. Dist. LEXIS 88030 (E.D. Cal. 2009) ............................. 12

*Microsoft Corp v. BEC Computer Co., Inc.*, 818 F.Supp. 1313 (C.D. Cal. 1992) ..................... 11

*Mirkin v. Wasserman*, 5 Cal.4th 1082 (1993) ................................. 7

*Nutmeg Securities, Ltd. v. McGladrey & Pullen*, 92 Cal.App.4th 1435 (2001) ......................... 7

*OCM Principal Opportunities Fund, L.P., v. CIBC World Market Corp.*, 157 Cal.App.4th 835 (2007) ................................. 7

*Pacific Gas & Electric Company v. Bear Stearns & Company*, 50 Cal.3d 1118 (1990)...........10

*Parsons v. Tickner*, 31 Cal.App.4th 1513 (1995) ...........9

*Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158 (C.D. Cal. 1998)...........6

*PM Group, Inc. v. Stewart*, 154 Cal. App. 4th 55 (2007)...........9

*Rubin v. Green*, 4 Cal.4th 1187 (1993)...........2, 11

*Sahni v. Emerald Mortgage Corp.*, 2008 Cal.App.Unpub. LEXIS 9196 (2008)...........7

*Silberg v. Anderson*, 50 Cal.3d 205 (1990)...........10

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007)...........6

*Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153 (1991)...........6

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ...........1, 4

*Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors*, 2010 U.S. Dist. LEXIS 115312 (S.D. Cal. 2010) ...........12

*Wise v. Thrifty Payless, Inc.*, 83 Cal.App.4th 1296 (2000)...........10

*Yack v. Dacquisto*, 2009 Bankr. LEXIS 4554 (9th Cir. BAP 2009)...........12

*Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir. 1999) ...........5

I.  **INTRODUCTION**

Cold Smoke Finance, LLC's ("Cold Smoke") Adversary Complaint described and documented a fraudulent scheme by debtor David Kahn and Tim McCallum. In a nutshell, McCallum lied to Cold Smoke to obtain money supposedly to purchase hats, but which he really gave to Kahn to purchase stock in a company called Media Cart Holdings ("MCH"). Kahn and McCallum then transferred money back and forth in order to cover up the scheme and keep Cold Smoke in the dark until late 2009. Because he cannot defend Cold Smoke's case on the merits, Kahn has decided to take a different approach. He's chosen to blame the victim instead and file a meritless counterclaim against Cold Smoke, its principle and purported agent.

As discussed in Cold Smoke's companion motion, Kahn's counterclaim is a Strategic Lawsuit Against Public Participation ("SLAPP"). Like all SLAPPs, Kahn's aim is not to win; but to "deplete [Cold Smoke's] energy" and "drain [its] resources." *Flatley v. Mauro*, 39 Cal.4th 299, 312 (2006). Indeed, in its rush to punish Cold Smoke for filing this adversary proceeding, Kahn filed a counterclaim, and then amended counterclaim, that is completely devoid of any factual allegations and is so lacking in legal merit that there can be no conclusion other than it was "brought, not to vindicate a legal right, but rather to interfere with [Cold Smoke's] ability to pursue [its own] interests." *Church of Scientology of California v. Wollersheim*, 42 Cal.App.4th 628, 645 (1996) (*overruled on other grounds by Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53 (2002)).

Specifically, the following claims in Kahn's amended counterclaim fail for the following reasons:

- **First Claim for Relief - Fraud:** Under 9(b)[1], claims for fraud must be specifically pleaded. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Kahn does not plead his fraud claim with any specificity, let alone the specificity required by FRCP 9(b). For starters, Kahn fails to allege any actionable misrepresentations by Cold Smoke.

---

[1] All "Rule" references are to the Federal Rules of Civil Procedure unless otherwise specifically indicated.

-1-

COLD SMOKE'S MOTION TO DISMISS        CASE NO. 10-90637-PB

Instead, the supposedly false statements are either true or non-actionable puffery. Further, Kahn takes a shotgun pleading approach and impermissibly lumps all the counterdefendants together without alleging which defendant made which representation. Next, Kahn fails to allege that Cold Smoke knew or suspected its alleged representations were false as is required for a fraud claim. And finally, Kahn fails to allege that his supposed reliance on Cold Smoke's alleged representations was justifiable. The Court should dismiss his fraud claim on any of these grounds.

- **Second Claim for Relief – Negligent Misrepresentation:** Because it "sounds" in fraud, Kahn's negligent misrepresentation claim must also meet Rule 9(b)'s heightened pleading requirements. Since Kahn's negligent misrepresentation claim is word for word identical to his fraud claim, the negligent misrepresentation claim fails for the exact same reasons the fraud claim fails. Moreover, his negligent misrepresentation claim is barred by the applicable two-years statute of limitations.

- **Third Claim for Relief – Interference With Prospective Economic Advantage:** California's litigation privilege applies to any communication having "some relation" to a judicial proceeding. *Rubin v. Green*, 4 Cal.4th 1187, 1193-1194 (1993) (emphasis original). Kahn's claim for interference with prospective economic advantage arises from the lawsuit Cold Smoke previously filed against Kahn in federal court. As such, it is absolutely protected by the litigation privilege. *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1249 (2007) ("We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action."). Further, even if Kahn's claim was not barred by the litigation privilege (which it is), Kahn has no standing to bring it since it belongs to the bankruptcy estate.

For these reasons, all of which are discussed more fully below, the Court should dismiss Kahn's first amended counterclaim with prejudice.

//
//

## II. RELEVANT FACTS

Cold Smoke filed its Adversary Complaint against Debtor Kahn on December 30, 2010 (Doc. 1). Kahn answered Cold Smoke's amended adversary complaint on June 17, 2011. (Doc. 17). A week later, on June 24, he filed a counterclaim against Cold Smoke, its principle Dan Brooks, and its purported agent Mike Traa. (Doc. 18). On July 11, before anyone even responded, Kahn filed a first amended counterclaim that dropped Brooks and Traa. (Doc. 19). Three days later he filed an amended third-party complaint against Brooks and Traa. (Doc. 21). Kahn's amended counterclaim is virtually identical to his amended third party complaint.

Given the convoluted and confusing procedural manner in which Kahn has attempted to bring his counterclaims, it's no surprise the allegations in his amended counterclaim are convoluted and confusing as well. As best Cold Smoke can tell, it appears Kahn alleges the following:

In 1999, Kahn acquired a 10% interest in a company owned by Tim McCallum called All Star Apparel ("ASA"). ¶44.[2]

On August 20 2007, Cold Smoke, Brooks, and Traa allegedly made misrepresentations to Kahn about McCallum and ASA (the "August 2007 Representations"). ¶¶ 15, 46. The supposed purpose of these representations was to trick Kahn and his various entities into: (1) allowing ASA or McCallum to purchase up to $5 million of Kahn's stock in MCH; (2) giving ASA or McCallum a line of credit financing; and (3) taking another 10% interest in ASA. ¶¶ 21, 52.

In August 2008, Cold Smoke, Brooks and Traa allegedly made more misrepresentations to Kahn about McCallum and ASA (the "August 2008 Representations"). ¶¶28, 59. Based on these representations, Kahn and his entities supposedly: (1) agreed to refund $750,000 of McCallum's purchase of MCH stock; and (2) allowed ASA or McCallum to purchase a 20% profit participation in Kahn's holding company KCM MC Holdings, LLC. ¶¶ 20-30, 51-52.

---

[2] All ¶ references are to Kahn's amended counterclaim.

1  In January 2010, Cold Smoke filed a lawsuit against McCallum, Kahn and Kahn's entities in federal court (the "Federal Lawsuit"). The alleged purpose of this lawsuit was to "scare Kahn" into settling by "torpedo[ing] his relationship" with MCH. ¶¶ 70, 80.

Needless to say, Cold Smoke rejects Kahn's allegations and submits that his counterclaim is the latest chapter in his scorched earth approach toward this litigation. Essentially, Kahn asks the Court to believe that Cold Smoke and McCallum conspired to defraud Kahn by inducing Kahn to loan money to McCallum/All-Star. It's notable, however, that Kahn has not even named McCallum as a counterdefendant or third-party defendant but has instead chosen to blame the real victim of Kahn and McCallum's conspiracy to defraud instead. If Kahn truly believed Kahn had been defrauded by McCallum, why would he not assert claims against him? Certainly Kahn could and would assert a claim against the very person he claims caused so many of Kahn's losses and has not repayed the extension of credit!

But even accepting Kahn's allegations as true, as this Court must, it is clear that all three of Kahn's claims for relief fail as a matter of law.

### III.  ARGUMENT

#### A.  The Court Should Dismiss Kahn's First Claim For Fraud

Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess*, 317 F.3d at 1105. Rule 9(b) requires the circumstances surrounding the fraud be pleaded with specificity. *Id.* at 1103-04. Failure to plead a fraud claim with sufficient specificity is grounds for dismissing the claim under Rule 12(b)(6). *Id.* at 1007.

Kahn's fraud claim fails to meet Rule 9(b)'s requirements in several respects.

##### 1.  None of Cold Smoke's alleged August 2007 misrepresentations are actionable

Kahn alleges that, in August 2007, Cold Smoke made the following representations:

- Cold Smoke had entered into a prior business relationship with ASA;

- Cold Smoke was providing millions of dollars in factored purchasing orders to ASA;
- ASA was doing a great business with substantial sales that justified the amount of Cold Smoke's loans;
- ASA was a credit worthy, thriving business; and
- Cold Smoke was well pleased with ASA's performance and with its business relationship with ASA.

¶15.

The first representation (that Cold Smoke and ASA had a prior business relationship) is true and Kahn does not allege otherwise. *See* ¶16. As such, it is not actionable. *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.").

The second representation (that Cold Smoke provided loans for "factored" purchase orders) is barred by the statute of limitations as discussed in section III.B. below. *See* p. 9 at fn. 6.

The third, fourth and fifth representations (that ASA was doing a "great," "credit worthy," "thriving" business that Cold Smoke was "well pleased" with) are classic examples of non-actionable puffery. *See Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (Explaining that "general, subjective" statements are non-actionable puffery while "specific," "absolute," and "quantifiable" statements are not.).

//
//

### 2.   Kahn impermissibly lumps the counterdefendants together

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." *Id.* at 765. A plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998).

Here, Kahn does not attribute any of the allegedly fraudulent statements to any particular counterdefendant.[3] Instead, he alleges "Cold Smoke, Brooks, Traa and each of them" made the alleged misrepresentations. ¶¶ 15, 28. This type of "shotgun pleading" fails to "state clearly how each and every defendant is alleged to have violated [Kahn's] legal rights." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (Affirming district court's dismissal of plaintiff's "everyone did everything allegations.").

Moreover, in a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they speak, what they said or wrote, and when it was said or written." *Cisneros v. Instant Capital Funding Group, Inc.*, 263 F.R.D. 595, 607 (E.D. Cal. 2009) (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (1991)). Kahn makes no effort to allege who at Cold Smoke made the supposed misrepresentations or their authority to make them.

### 3.   Kahn does not allege Cold Smoke knew its statements were false

To show that Cold Smoke knew its statements were false, Kahn must plead "'either [Cold Smoke's] actual knowledge of the false or baseless character of its opinion' or [that Cold Smoke]

---

[3] As discussed above, Brooks and Traa were named as counterdefendants in Kahn's original counterclaim. Kahn dropped them as named counterdefendants in his amended counterclaim and instead filed a third-party complaint against them, which makes the same exact factual allegations as his amended counterclaim. Regardless of this procedurally oddity, the requirement that Kahn specifically identify who made what representation remains in full force and effect.

-6-

COLD SMOKE'S MOTION TO DISMISS                                            CASE NO. 10-90637-PB

had 'no belief in the truth of the statement and [made] it recklessly, without knowing whether it was true or false.'" *Nutmeg Securities, Ltd. v. McGladrey & Pullen*, 92 Cal.App.4th 1435, 1448 (2001). Kahn fails to meet this standard.

With respect to the August 2007 Representations, Kahn does not allege Cold Smoke made them with actual knowledge that they were false or without believing that they were true. Instead, he alleges Cold Smoke was "reckless" in making the statements and "could not have reasonably believed they were true." ¶17. This exact allegation was held insufficient to state a claim for intentional misrepresentation in *Sahni v. Emerald Mortgage Corp.*, 2008 Cal.App.Unpub. LEXIS 9196, *21 (2008) ("While [the operative complaint] alleges that defendants made the alleged misrepresentations without reasonable grounds for believing them to be true and with reckless disregard for whether they were true, it does not allege that defendants actually knew or suspected that their statements were untrue.").

As for the August 2008 Representations, Kahn's counterclaim does not allege Cold Smoke knew they were false or made them recklessly without knowledge or suspicion that the statements were untrue. In fact, the counterclaim is completely silent when it comes to Cold Smoke's purported knowledge about the falsity of the August 2008 Representations.

### 4. Kahn's alleged reliance on Cold Smoke's due diligence was not reasonable

A plaintiff asserting fraud by misrepresentation is obliged to plead and prove not just actual reliance, but that its reliance was justifiable. *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1092 (1993). Like all elements of fraud, reliance must be pleaded with particularity. To do this, the plaintiff must allege "circumstances were such to make it *reasonable* for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation." *OCM Principal Opportunities Fund, L.P., v. CIBC World Market Corp.*, 157 Cal.App.4th 835, 864 (2007) (emphasis original). This Kahn cannot do.

Kahn alleges he "reasonably relied" on Cold Smoke's alleged misrepresentations because Brooks and Traa "appeared to be knowledgeable and competent business people" who conducted

-7-

-8-

"their own professional and comprehensive due diligence" into their own previous MCH investment opportunity." ¶23. Put another way, Kahn alleges that he closed his eyes and blindly accepted Cold Smoke's due diligence regarding McCallum/ASA without doing any due diligence of his own. According to Kahn, "no prudent lender" would have done business with McCallum had they done "proper due diligence." ¶16. Yet, Kahn alleges it was acceptable for *him* to rely on Cold Smoke's evaluation of McCallum/All-Star's creditworthiness. Such as double standard runs counter to the law.

"A [party] may not blindly rely upon a representation if its falsity would be obvious if he made a cursory examination or investigation." *In re Sir*, 2010 Bankr. LEXIS 1800, * 35 (Bank. Ct. N.D. Cal. 2010). Indeed, "[a]s a matter of economic and social policy, [the plaintiffs] should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools. This kind of self-reliance promotes sound investment and credit practices and discourages the careless use of monetary resources." *Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal.App.4th 781, 793 (2001) (citations omitted). Since Kahn claims the problems with McCallum and ASA were easily discoverable to any "prudent lender", it was not reasonable for him to blindly rely on Cold Smoke's due diligence (or supposed lack thereof) without doing any due diligence of his own.

Moreover, Kahn admits he had an ongoing business relationship with McCallum dating back to 1999. ¶¶ 13, 44. That Kahn chose to invest more with McCallum in 2007 and 2008 shows that: (1) McCallum's financial problems were not as obvious as Kahn suggests; or (2) his 2007/2008 decisions had nothing to do with Cold Smoke's alleged misrepresentations. In either event, Cold Smoke is not liable for fraud.

### B. The Court Should Dismiss Kahn's Second Claim For Negligent Misrepresentation

Kahn's negligent misrepresentation claim is word for word identical to his fraud claim.[4] Because negligent misrepresentation claims must also meet Rule 9(b)'s heightened pleading standard, Kahn's second claim similarly fails for all the reasons discussed above. *Errico v. Pacific Capital Bank, N.A.*, 753 F.Supp.2d 1034, 1049 (N.D. Cal. 2010). In addition, Kahn's negligent misrepresentation claim is also barred by the applicable statute of limitations.

Cold Smoke's alleged misrepresentations took place in August 2007 and August 2008. Kahn therefore had to bring his claim for negligent misrepresentation within 2 years of the discovery of Cold Smoke's alleged misrepresentations. *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal.App.4th 1308, 1316 (2007). Though the statute begins to run from Kahn's "discovery" of Cold Smoke's misrepresentations, "literally interpreted, this language would give [Kahn] an unlimited period to sue if he could establish ignorance of the facts." *Parsons v. Tickner*, 31 Cal.App.4th 1513, 1525 (1995). Thus, Kahn "must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1169 n. 13 (C.D. Cal. 2002). "The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer." *E-Fab*, 153 Cal.App.4th at 1319.

Kahn alleges he discovered that Cold Smoke's alleged representation that the purchase orders were "factored" (rather than contingent) was false in "late January 2010." ¶55. Kahn's counterclaim is silent as to when he discovered any of Cold Smoke's other alleged misrepresentations. Assuming Kahn discovered all of Cold Smoke's alleged misrepresentations in January 2010, he does not allege any specific facts showing why he could not discover them

---

[4] Kahn obviously just re-labeled his fraud claim as a claim for negligent misrepresentation without making any changes. For example, Kahn alleges a claim for punitive damages in both causes of action (*see* ¶33 and ¶64), even though "it is well settled that punitive damages are not recoverable for negligent misrepresentation." *PM Group, Inc. v. Stewart*, 154 Cal. App. 4th 55, 69 (2007).

-9-

| COLD SMOKE'S MOTION TO DISMISS | CASE NO. 10-90637-PB |

any earlier. The fact that Kahn admits he had a business relationship with McCallum dating back to 1999 (¶44) and that it was "common knowledge" that ASA's purchase orders were contingent in nature (¶55) belies any argument that Kahn could not have discovered the alleged misrepresentations before late January 2010. Because Kahn fails to state any facts showing otherwise, his claim for negligent misrepresentation is time barred.[5]

### C. The Court Should Dismiss Kahn's Third Claim For Interference With Prospective Economic Advantage

#### 1. The litigation privilege bars Kahn's third claim for relief

California's litigation privilege, codified at California Code of Civil Procedure §47(b), is absolute; it applies, regardless of whether the communication was made with malice or the intent to harm. *Wise v. Thrifty Payless, Inc.*, 83 Cal.App.4th 1296, 1302 (2000). Put another way, application of the privilege does not depend on the publisher's "motives, morals, ethics or intent." *Silberg v. Anderson*, 50 Cal.3d 205, 220 (1990). "Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal.App.4th 892, 913 (2002).

Although originally applied only to defamation actions, the privilege has been extended to **any** communication, not just a publication, having "some relation" to a judicial proceeding. *Rubin,* 4 Cal.4th at 1193-1194 (emphasis original). Indeed, "the policy of encouraging free access to the courts is so important that the litigation privilege extends beyond claims of defamation to claims of abuse of process, intentional infliction of emotional distress, negligent misrepresentation, invasion of privacy, fraud, and . . . **interference with contract and prospective economic advantage**." *Pacific Gas & Electric Company v. Bear Stearns & Company*, 50 Cal.3d 1118, 1132 (1990) (emphasis added). "In fact, the privilege applies to **any** action except one for malicious prosecution." *Id.* (emphasis added).

---

[5] The limitations period for intentional misrepresentation is three years. Cal. Civ. Proc. § 338(d). Because Kahn fails to specifically allege why he did not discover the falsity of Cold Smoke's alleged August 2007 Misrepresentations within three years of filing his counterclaim, his fraud claim based on those representations is time barred as well.

-10-

COLD SMOKE'S MOTION TO DISMISS                                    CASE NO. 10-90637-PB

Here, Kahn's claim for interference with prospective economic advantage alleges:

- Smoke Finance, Dan Brooks, Mike Traa and each of them created a plan to torpedo the relationship between Mr. Kahn and MCH, **including, but not limited to filing a complaint for fraud and RICO violations** on January 4, 2010, a week before the shareholder meeting. Kahn's amended counterclaim at ¶70.

- On January 4, 2010, Smoke Finance, Dan Brooks, Mike Traa and each of them, in the name of Smoke Finance, **filed a lawsuit (the "Lawsuit")** against Mr. Kahn and three Mr. Kahn entities, which included RICO claims. Id. at ¶72.

- On or about January 4, 2010 Cold Smoke **filed a lawsuit** against Mr. Kahn falsely claiming Smoke Finance, Dan Brooks, Mike Traa and each of them had no knowledge of ASA's or Tim McCallum's investment in a profit participation position of Mr. Kahn's holdings in MCH. Id. at ¶77.

- Smoke Finance, Dan Brooks, Mike Traa and each of them lacked probable cause **to file the Lawsuit.** Id. at ¶78.

- Additionally, **the Lawsuit was filed** with a malicious intent. Id. at ¶79.

- Second, Smoke Finance, Dan Brooks, Mike Traa and each of them **filed the Lawsuit** in federal court with the RICO claims mostly in an attempt to scare Mr. Kahn and force a settlement. Id. at ¶80.

By any definition, Kahn's third claim for relief arises out of the filing of the Federal Lawsuit. As such, it is absolutely protected by the litigation privilege. *Action Apartment Ass'n*, 41 Cal.4th at 1249 ("We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action"); *Rubin*, 4 Cal.4th at 1195 ("Filing the complaint and subsequent pleadings in the litigation" are protected by the litigation privilege.); *Abraham v. Lancaster Community Hospital*, 217 Cal.App.3d 796, 822 (1990) ("[I]t cannot be disputed that the filing of a lawsuit is a publication in the course of a judicial proceeding."); *Microsoft Corp v. BEC Computer Co., Inc.*, 818 F.Supp. 1313, 1319 (C.D. Cal. 1992) ("[T]he filing of improper or meritless pleadings . . . is privileged").

Moreover, Cold Smoke's alleged conduct in sending the Federal Lawsuit to MCH's shareholders and directors is privileged as well. "[M]erely informing a third party of the pendency of the litigation" is within the scope of the litigation privilege. *Cargill Inc. v. Progressive Dairy Solutions, Inc.*, 2008 U.S. Dist. LEXIS 46972, *21 (E.D. Cal. 2008); *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1152 (C.D. Cal. 2000) (letter informing third party that trademark suit had been filed was privileged); *Designing Health, Inc. v Erasmus*, 2001 U.S. Dist.

-11-

LEXIS 25952, *12-13 (C.D. Cal. 2001) (letter and news release to consumer and trade publications and distributors announcing suit for misappropriation of trade secrets and other claims were protected by the litigation privilege "because they simply informed the recipients of the pendency of the litigation and the claims asserted"); *Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors*, 2010 U.S. Dist. LEXIS 115312, *10 (S.D. Cal. 2010) ("Defendant's complaint alleges that the Press Release was sent 'directly to several Panda customers.' Defendant's customers are undoubtedly persons who have a 'substantial interest' in the litigation . . . Thus, the litigation privilege applies on the face of the complaint.").

Because Kahn can never plead around the litigation privilege, the Court should dismiss his third claim with prejudice.

    **2.    Kahn cannot prevail on his third claim for another reason: He lacks standing to bring it**

A trustee is the legal representative of the bankruptcy estate and as such has the capacity to sue and be sued. *In re Stoll*, 252 B.R. 492, 495 (9th Cir. BAP 1995). "Only a trustee may pursue a cause of action belonging to the bankruptcy estate." *Id.* "Causes of action existing at the time the bankruptcy petition is filed are property of the estate." *Yack v. Dacquisto*, 2009 Bankr. LEXIS 4554, *15 (9th Cir. BAP 2009) (citations omitted). Thus, "[l]awsuits remain part of the estate unless the bankruptcy trustee abandons them." *Griffen v. Allstate Ins. Co.*, 920 F.Supp. 127, 130 (C.D. Cal. 1996); *Kaur v. ETS Services, Inc.*, 2009 U.S. Dist. LEXIS 88030, *5 (E.D. Cal. 2009) (same).

Kahn's alleged claim for interference with prospective economic advantage arose when Cold Smoke filed the Federal Lawsuit on January 4, 2010. Kahn did not file for bankruptcy until July 13, 2010 — six months later. The claim therefore belongs to the estate.

Kahn does not allege that the Trustee abandoned his alleged claim against Cold Smoke for interference with prospective economic advantage. As such, the claim still belongs to the Trustee,

-12-

COLD SMOKE'S MOTION TO DISMISS             CASE NO. 10-90637-PB

and Kahn has no standing to bring it.[6] Accordingly, Kahn cannot prevail on his third claim, as a matter of law, for this reason as well.

## IV. CONCLUSION

Kahn filed his counterclaim for no other reason than to make this litigation so expensive and time consuming that Cold Smoke will simply give up. Because Kahn has had three chances to allege his claims, and still has not adequately pleaded a viable theory, the Court should dismiss Kahn's counterclaim with prejudice and allow Cold Smoke to get back to the business of litigating its valid claims against Kahn.

DATED: July 25, 2011

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
BRETT M. WEAVER

By: _____s/ Brett M. Weaver_____
BRETT M. WEAVER

501 W. Broadway, Suite 1720
San Diego, California 92101
Telephone: (619) 230-0063
Facsimile: (619) 238-0622

COHEN COOPER ESTEP & ALLEN, LLC
STEVEN J. ESTEP (GA Bar No. 250450)
JEFFERSON M. ALLEN (GA Bar No. 010898)
3330 Cumberland Boulevard, Suite 600
Atlanta, Georgia 30339
Telephone: (404) 814-0000
Facsimile: (404) 816-8900

---

[6] Kahn alleges that he is the assignee of all claims belonging to KCM, KCM MC Holdings, LLC and David J. Kahn as the Trustee of the David Kahn Trust. ¶4. Cold Smoke doubts that these entities could validly transfer claims to Kahn a mere **four days** after he declared bankruptcy. But this issue need not be addressed now. From the face of the counterclaim, it is clear that Kahn's third claim belonged exclusively to him pre-petition and now belongs exclusively to the Trustee. Indeed, all of the supposed damages resulting from Cold Smoke's alleged interference were suffered by Kahn and not his entities. ¶82.

-13-